This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Samuel Pipher, appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated his parental rights to his daughter, T.K., and placed her in the permanent custody of Wayne County Children Services Board ("CSB"). We affirm.
 {¶ 2} T.K. was born on September 6, 2000. At the time she was born, she resided with her mother, Katrina K. Pipher, her father, was not married to T.K.'s mother and has never met T.K. CSB initially became involved with the family because T.K. failed to thrive as an infant. The agency developed a case plan for the mother, who eventually relinquished her parental rights and is not a party to this appeal.
 {¶ 3} Since shortly after T.K. was born, Pipher has been serving a six-year period of incarceration following a conviction of aggravated burglary and related charges. After receiving notification about CSB's involvement in this case, Pipher sent several letters to CSB, requesting that they allow T.K. to visit him at the prison, and that they send him more information about his daughter, including photographs and her address. CSB refused to allow visitation and apparently refused to send Pipher any information about T.K. other than copies of some of the materials filed in this case. CSB moved for permanent custody on March 4, 2002.
 {¶ 4} A permanent custody hearing commenced on November 21, 2002. Because T.K.'s mother relinquished her parental rights, the evidence at the hearing pertained primarily to Pipher. Pipher's counsel focused on the lack of effort that CSB had made to involve Pipher in his daughter's life and its refusal to work toward placement of the child with him. At the hearing, Pipher indicated that he would like to get to know his daughter. Because he is not scheduled to be released from prison until November, 2006 and because he indicated that he would need about one year to obtain steady employment and housing, Pipher's own testimony was that he would not be prepared to provide a home for T.K. until November, 2007.
 {¶ 5} The trial court granted CSB's motion and placed T.K. in the permanent custody of the agency. Regarding Pipher's challenge to the lack of effort made by CSB to involve him in the case planning, the trial court found that "CSB's decision not to add Mr. Pipher to the case plan or to provide services is a case management decision made by CSB, not a constitutional issue." Therefore, it implicitly found that CSB had acted appropriately in failing to involve Pipher in the case plan, despite his repeated requests that it do so. Pipher appeals and raises five assignments of error.
 Assignment of Error I {¶ 6} THE TRIAL COURT DID NOT COMPLY WITH OHIO REVISED CODE2151.28(C), 2151.29, JUV.R. 16, AND CIV.R. 4, AND THEREBY NEVER GAINED JURSIDICTION OVER APPELLANT FOR PURPOSES OF TEMPORARY CUSTODY. THE SUBSEQUENT ORDER OF PERMANENT CUSTODY DERIVING THEREFROM WAS NOT CURED BY A LATER APPEARANCE AND IS ALSO THEREFORE VOID. THE APPELLANT'S DUE PROCESS AND EQUAL PROTECTION RIGHTS HAVE BEEN VIOLATED IN THIS PROCESS.
 {¶ 7} Pipher contends that, because he was not properly served with the complaint prior to the trial court's hearing on temporary custody, all subsequent orders are void because the trial court did not have personal jurisdiction over him. Because the record reveals that Pipher received actual notice of the initial complaint, his argument is without merit.
 {¶ 8} CSB filed the complaint with the trial court on April 4, 2001. The complaint alleged, in part, that T.K. was a neglected and dependent child because Katrina K., T.K.'s mother, "has demonstrated extreme difficulties in parenting [the child,]" and that the child's father, Pipher, was incarcerated at Madison Correctional Institution in Marion, Ohio. The CSB caseworker testified that, according to her notes, the prior caseworker sent the complaint via facsimile transmission to Pipher at the prison. According to Pipher's testimony, he remembered receiving something at the prison via fax on either the fourth or fifth of March or April of 2001 that informed him about this case. Although he did not identify what he received as the complaint, he indicated that the document informed him that "that they were taking custody [of T.K.] because the mother, Katrina [K.] neglected her."
 {¶ 9} Although Pipher contends that the manner in which he was served, via facsimile transmission, failed to satisfy the requirements of the applicable statutes and rules, he does not dispute that he did, in fact, receive notice of the complaint prior to any court proceedings. Consequently, because he received actual notice of the complaint, his argument that the trial court lacked jurisdiction over him is without merit. See In re Miller (1986), 33 Ohio App.3d 224, 226. The first assignment of error is overruled.
 Assignment of Error II {¶ 10} THE TRIAL COURT DID NOT COMPLY WITH OHIO REVISED CODE2151.419, NOR WITH OHIO REVISED CODE 2151.28(B)(2), THUS ACTING CONTRARY TO LAW AND VIOLATING APPELLANT'S RIGHT TO DUE PROCESS.
 Assignment of Error III {¶ 11} WAYNE COUNTY [CHILDREN] SERVICES DID NOT COMPLY WITH THE MANDATORY PROVISIONS OF OHIO REVISED CODE 2151.412(D), THEREBY ACTING CONTRARY TO LAW AND VIOLATING APPELLANT'S RIGHT TO DUE PROCESS.
 Assignment of Error IV {¶ 12} WAYNE COUNTY [CHILDREN] SERVICES DID NOT COMPLY WITH OHIO REVISED CODE 2151.412(G)(2), IN DEROGATION OF APPELLANT'S FUNDAMENTAL RIGHTS UNDER U.S. CONST. AMEND. XIV AND OHIO CONST. ART. I, § 16.
 {¶ 13} We will address these three assignments of error together because they are closely related. Pipher contends that CSB violated the mandatory requirements of R.C. 2151.412 because it failed to prepare a case plan for him, as the natural father of T.K., and it failed to consider other placement options prior to moving for permanent custody of T.K. Pipher further contends that the trial court abrogated its statutory duty by failing to scrutinize whether CSB had made reasonable efforts toward placement of T.K. with him.
 {¶ 14} Pipher is correct that children services agencies are statutorily required to develop case plans for children in their custody and those case plans should include objectives for each of the child's parents. See R.C. 2151.412. He is also correct that, as a statutory check on whether the agency performs its duty to provide services to the parents, the trial court is required to determine whether the agency has made reasonable efforts to return the child to either of the parents before it authorizes the continued removal of the child. See R.C. 2151.419; In re Stevens (July 16, 1993), 2nd Dist. No. 13523.
 {¶ 15} Although CSB asserts that the trial court had already made a finding that it had made reasonable efforts toward reunification, that finding pertained to the agency's attempts to reunite T.K. with her mother, not her father. As the Fourth District Court of Appeals stressed in In re Efaw (Apr. 21, 1998), 4th Dist. No. 97CA49:
 {¶ 16} "Even where the agency has made reasonable efforts to return the child to one parent or another relative, the fundamental right of the other parent may require that the agency at least consider reuniting that parent with the child. * * * The exclusion of a natural parent from the protections of R.C. 2151.419(A) under any circumstance not explicitly provided for in R.C. 2151 would undermine the express legislative interest in returning children to their parental homes, and would raise serious issues of constitutional due process with respect to the fundamental rights of natural parents."
 {¶ 17} There was no determination made in this case as to whether CSB had made reasonable efforts to place T.K. with her father. In fact, CSB had refused to include Pipher in its case planning efforts and had done nothing to involve this father in his child's life.
 {¶ 18} This lack of reasonable case planning effort by CSB would potentially be reversible error if the trial court's order of permanent custody had been based on R.C. 2151.414(E)(1), which requires the trial court to find that the child cannot or should not be returned to either parent if the court finds that the parent failed to substantially remedy the conditions causing the child to be placed outside the home "notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents[.]" See In the Matter of Ward (Aug. 2, 2000), 4th Dist. No. 99CA2677, citing with approval In re Scott (Sept. 17, 1999), 6th Dist. No. L-99-1012 ("`Absent any evidence of agency efforts [toward] reunification after the children's removal from the home, an R.C. 2151.414(E)(1) predicate finding cannot be sustained.'") "If an agency chooses to argue that the parent did not rectify the cause(s) for removal, then the parent must have an opportunity to do so." Ward, supra.
 {¶ 19} The agency does not have that same obligation, however, when custody is terminated due to one of the other factors under R.C.2151.414(E). See Id. In this case, the trial court did not terminate Pipher's parental rights under R.C. 2151.414(E)(1) because he failed to remedy the conditions causing T.K.'s removal from the home. Instead, the court relied on R.C. 2151.414(E)(12), which provides:
 {¶ 20} "The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing."
 {¶ 21} Pipher's parental rights were terminated because he is currently incarcerated, has been throughout T.K.'s lifetime, and will continue to be incarcerated for several more years. Pipher does not challenge the trial court's finding that he would be incarcerated for at least another eighteen months following the permanent custody hearing. In fact, Pipher himself testified that he expected to be incarcerated until November of 2006. He further testified that he would need another year after his release from prison to secure stable employment and housing before he would be available to care for T.K.
 {¶ 22} Moreover, even where the agency does have a duty to use reasonable efforts, courts have found an implied exception to mandatory case planning efforts where the efforts would be futile. See, e.g., In re Jackson (Aug. 13, 1999), 2nd Dist. No. 17514; In re Smallwood (Jan. 26, 1998), 12th Dist. No. CA97-02-041; In re Crosten (Mar. 21, 1996), 4th Dist. No. 95CA1692. However, "[t]rial courts should be cautious in finding that reasonable efforts would have been futile where an agency has chosen to ignore the natural parent. * * * In making such consequential decisions as permanently terminating parental rights, a trial court should be afforded objective standards." Efaw, supra.
 {¶ 23} In this case, CSB apparently made the decision, without court approval, to exclude Pipher from the case plan. Because Pipher would not be available to take custody of T.K. until November of 2007, any efforts by CSB to work toward placement of T.K. with Pipher would have been futile. However, as noted above, a finding of futility should not be one that is made in the first instance, before the agency has given the parent a chance. Moreover, the finding of futility is one to be made by the trial court; it is not for the agency to pick and choose which parents are worthy of case plans. This court is particularly concerned about statements made the CSB caseworker and the trial judge, suggesting that the agency has such discretion.
 {¶ 24} Each parent has a constitutional right to raise his or her children and Ohio's dependency and neglect statutes were designed, in part, to protect that right, putting in place checks on the agency's exercise of its discretion. The agency is required to give all parents the opportunity to be involved in the case plan. See R.C. 2151.412(D) and (E). A children services agency deciding not to include a parent in the case planning and reunification efforts should be the rare exception, not the rule, regardless of how futile the effort may initially appear to be.
 {¶ 25} The evidence before the trial court demonstrated that case planning efforts by CSB would, in fact, have been futile because Pipher would not be released from prison for several years. Because the statutory scheme is guided by the best interest of the child, the trial court did not err by implicitly concluding that T.K.'s best interests would not have been served by attempting to establish a relationship with a father she has never met only to later sever that relationship because Pipher would not be available to care for her for a period of several years. Consequently, although this Court does not sanction the agency's refusal to offer this father any services, Pipher has failed to demonstrate reversible error. The second, third, and fourth assignments of error are overruled.
 Assignment of Error V {¶ 26} R.C. 2151.413(D)(1) WAS IMPROPERLY INVOKED AND UNCONSTITUTIONALLY APPLIED, VIOLATING U.S. CONST. AMEND. XIV AND OHIO CONST. ART. I, § 16.
 {¶ 27} Through his final assignment of error, Pipher raises a constitutional challenge that he did not raise in the trial court. It is fundamental that this Court need not consider a constitutional argument that is raised for the first time on appeal. Atkinson v. Grumman Ohio Corp. (1988), 37 Ohio St.3d 80, 82. The fifth assignment of error is overruled accordingly.
 {¶ 28} Pipher's assignments of error are overruled. The decision of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.
SLABY, P.J., BAIRD, J. CONCUR.